## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
03/12/2010

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ENDEAVOUR HIGHRISE L.P.,** | § | **Case No. 09-33151-H4-11** |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| | § | |
| **WILLIAM M. CONDREY, P.C.,** | § | |
| **D/B/A FIRST AMERICAN** | § | |
| **TITLE–TANGLEWOOD AND D/B/A** | § | |
| **FIRST AMERICAN** | § | **Adversary No. 09-03335** |
| **TITLE–WESTHEIMER,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | | |
| **ENDEAVOUR HIGHRISE, L.P. AND** | | |
| **KENNETH A. ZIMMERN,** | | |
| Defendants. | | |

## MEMORANDUM OPINION ON TRUSTEE'S MOTION TO STRIKE JURY DEMAND
[Adv. Docket No. 23]

### I. INTRODUCTION.

This Memorandum Opinion addresses whether a demand for a jury trial made by one of

the defendants should be stricken. The Court issues this Opinion to underscore the time-

consuming and oft-confusing analysis that many courts (including this one) have undertaken in

arriving at a decision on whether to strike a jury demand. Indeed, there is severe split of authority

on whether a non-bankrupt defendant loses the right to a jury trial by filing a counterclaim in an

adversary proceeding initiated in bankruptcy court. A review of these conflicting authorities,

which this Court did in the instant dispute in order to arrive at a decision, leads this Court to hope

that Congress might someday pass a statute that will eliminate, or at least reduce, the difficulty of making a determination as to whether a jury trial has been waived. Until such legislation is passed, however, this Court, and others, will doubtless continue to spend much time wading through the murky waters where jury trial rights and bankruptcy law converge.

## II. PROCEDURAL AND FACTUAL BACKGROUND.

1. Endeavour Highrise, L.P. (Endeavour) is the developer of a high-rise condominium complex located in Seabrook, Harris County, Texas.

2. On or about July 26, 2008, Endeavour and Kenneth A. Zimmern (Zimmern) entered into an Earnest Money Contract (the Contract) whereby Endeavour agreed to sell, and Zimmern agreed to purchase, a condominium unit.

3. Pursuant to the Contract, Zimmern deposited earnest money of $44,000.00 (the Earnest Money) with William M. Condrey, P.C. d/b/a First American Title – Tanglewood and d/b/a First American Title – Westheimer (the Title Company). The Title Company still holds the Earnest Money.

4. Under the terms of the Contract, Endeavour is entitled to the Earnest Money if the sale and purchase of the condominium unit fails to close due to default by Zimmern. Conversely, under the terms of the Contract, Zimmern is entitled to the return of the Earnest Money if the sale and purchase of the condominium unit fails to close due to default by Endeavour.

5. The sale and purchase of the condominium unit did not close.

6. On May 4, 2009, Endeavour filed a voluntary Chapter 11 petition in this Court [Main Case 09-33151, Doc. No. 1].

7. On June 12, 2009, this Court appointed David R Jones as trustee of Endeavour's Chapter 11

2

estate (the Trustee) [Main Case 09-33151, Doc. No. 96].

8.  On August 27, 2009, the Title Company initiated the pending adversary proceeding by filing a

    pleading entitled: Original Complaint for Interpleader (the Complaint) [Adv. Doc. No. 1]

9.  The Complaint names Endeavour and Zimmern as defendants and sets forth, among other things,

    that: (a) the Title Company is an innocent stakeholder with respect to the Earnest Money and

    makes no claim to these funds; (b) the Title Company is unaware whether the transaction

    contemplated by the Contract failed to close due to default by Endeavour or by Zimmern; (c)

    the Title Company believes that the Earnest Money is subject to the conflicting claims of

    Endeavour and Zimmern; and (d) the Title Company stands ready, willing, and able to deposit

    the Earnest Money into the registry of this Court.

10. The relief requested in the Complaint is that: (a) the Title Company be permitted to interplead

    the Earnest Money into the Court's registry; (b) the Title Company be discharged from all claims

    with respect to the Earnest Money; and (c) the Court award attorneys' fees to the Title Company

    in the minimum amount of $1,500.00, with these fees to be paid from the interpleaded funds.

11. The Complaint was duly and properly served on Zimmern and the Trustee (as the authorized

    representative of Endeavour's Chapter 11 estate).

12. On September 14, 2009, the Trustee filed a pleading entitled: Trustee's Answer to Complaint

    for Interpleader and Cross-Claim (the Answer and Cross-Claim) [Adv. Doc. No. 10]. The cross-

    defendant is Zimmern.

13. In the Answer and Cross-Claim, the Trustee sets forth, among other things, that he supports the

    Title Company's action for interpleader and that Zimmern defaulted under the Contract for

    failing to close, for refusing to release the Earnest Money to Endeavour, and for refusing to pay

liquidated damages in the amount of 1.5% of the purchase price.

14. The relief requested in the Answer and Cross-Claim is that the Trustee be awarded a judgment against Zimmern "for all actual damages, declaratory relief, attorney's fees and costs, pre-and post-judgment interest and all such other and further relief to which the Trustee may be entitled." [¶ 28 of the Answer and Cross-Claim].

15. On October 19, 2009, Zimmern filed a pleading entitled: Defendant/Cross-Plaintiff Kenneth A. Zimmern's Answer to Complaint for Interpleader, Answer to Cross-Claim of Chapter 11 Trustee, and Counterclaim (the Answer and Counter-Cross-Claim) [Adv. Doc. No. 17]. The counter-cross-defendant is the Trustee.

16. In the Answer and Counter-Cross-Claim, Zimmern sets forth, among other things, that he is entitled to the Earnest Money because Endeavour defaulted under the Contract due to Endeavour's failure to satisfy certain conditions, including, but not limited to, Endeavour's failure to deliver to Zimmern a habitable condominium within a reasonable period of time after execution fo the Contract [¶ 35 of the Answer and Counter-Cross-Claim].

17. In his Counter-Cross-Claim against the Trustee, Zimmern alleges that Endeavour, in dealing with him, engaged in fraud, statutory fraud, and fraud in the inducement.[1] Among other things, Zimmern alleges that Endeavour made the following representations to him: (a) if he signed the Contract, Endeavour would pre-sell the condominium within sixty days to another buyer and enable Zimmern to receive a profit of at least $20,000; (b) the condominium would be complete

---

[1] Zimmern does not specifically state which representatives of Endeavour engaged in the alleged fraud. Because the Contract was negotiated and signed before the filing of Endeavour's bankruptcy petition, it is clear that Zimmern is not alleging that the Trustee committed the alleged fraud (as the Trustee was appointed only after Endeavour filed its Chapter 11 petition). Accordingly, the Court assumes that Zimmern's allegations of fraud are aimed at persons in control of or employed by Endeavour prior to the filing of the Chapter 11 petition. For purposes of this Memorandum Opinion, this Court will refer to these persons (or this person) simply as Endeavour.

and ready for occupancy by no later than the summer of 2007; and (c) the closing on the condominium was contingent on Zimmern obtaining financing from a lending institution [¶ 55 of the Answer and Counter-Cross-Claim].

18. In a paragraph entitled "Damages," Zimmern asserts that "[a]s a proximate result of the claims set forth above [*i.e.*, the Counter-Cross-Claims against the Trustee, as representative of Endeavor's estate], Zimmern has suffered the loss of custody, possession and control of his [E]arnest [M]oney." [¶ 64 of the Answer and Counter-Cross-Claim].

19. In a paragraph entitled "Attorney Fees, Interest and Costs," Zimmern asserts that he "does not seek his attorneys fees at this time. Zimmern does not request an award of pre- and post-judgment interest at the maximum rate provided by law or court costs at this time." [¶ 66 of the Answer and the Counter-Cross-Claim].

20. The relief requested by Zimmern in the prayer paragraph of the Answer and Counter-Cross-Claim is that a judgment be entered declaring that the Earnest Money "is the personal property of Zimmern, and not that of the Debtor, and that the Court enter an [*sic*] judgment ordering the Escrow Agent [*i.e.*, the Title Company] to tender, transfer, and otherwise return the [E]arnest [M]oney to the custody, control, and possession of Kenneth A. Zimmern for the reasons set forth herein and for such other and further relief as the Court deems just." [Prayer paragraph, page 11 of the Answer and Counter-Cross-Claim].

21. Zimmern expressly requests a jury trial in the prayer paragraph of the Answer and Counter-Cross-Claim.

22. On October 19, 2009, Zimmern filed a pleading entitled: Defendant and Cross-Defendant Kenneth A. Zimmern's Motion for Withdrawal of the Reference to United States District Court

Pursuant to 28 U.S.C. § 157(D) (the Motion to Withdraw Reference) [Adv. Doc. No. 18]. In the Motion to Withdraw Reference, Zimmern argues that because he is entitled to a jury trial, reference of this adversary proceeding should be withdrawn so that a jury trial can be held in the United States District Court for the Southern District of Texas.

23. On November 11, 2009, the Trustee filed a pleading entitled: Trustee's Motion to Strike Jury Demand and Objection to Kenneth A. Zimmern's Motion for Withdrawal of the Reference (the Motion to Strike) [Adv. Doc. No. 23]. In the Motion to Strike, the Trustee argues that Zimmern is not entitled to a jury trial. Thereafter, in the same pleading, the Trustee argues that reference of this adversary proceeding should not be withdrawn.

24. On December 3, 2009, Zimmern filed a pleading entitled: Cross-Defendant Kenneth A. Zimmern's Response to Trustee's Motion to Strike Jury Demand (the Response). [Adv. Doc. No. 27]. In the Response, Zimmern again argues that he is entitled to a jury trial and that the reference should be withdrawn.

25. On January 6, 2010, this Court held a hearing on the Motion to Strike and the Response. On this same day, the Court also held a hearing on the Motion to Withdraw Reference. Neither party adduced testimony from any witnesses nor introduced any exhibits. Rather, counsel for the Trustee and counsel for Zimmern made legal arguments. The Court then took the matter under advisement.

26. On January 8, 2010, Zimmern filed a pleading entitled: Cross-Defendant Kenneth A. Zimmern's Post-Hearing Memorandum of Law in Support of Right to Jury Trial [Adv. Doc. No 33]. In this pleading, Zimmern made further arguments as to why he is entitled to a jury trial.

27. This Memorandum Opinion addresses only the Motion to Strike and the Response, and the

6

arguments made by both parties on the issue of whether Zimmern is entitled to a jury trial. This Court will subsequently issue a separate Report and Recommendation to the District Court on the Motion to Withdraw Reference.

### III. CONCLUSIONS OF LAW

#### A. Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute concerns who holds title to the Earnest Money: the Trustee (on behalf of Endeavour's Chapter 11 estate) or Zimmern. Therefore, this dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of Endeavour's estate. Alternatively, because Zimmern asserts that he is entitled to recover what is "arguable property" of the estate – i.e., the Earnest Money – this dispute is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(B), as Zimmern is making a claim against "arguable property" of Endeavour's estate.[2] Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

#### B. The Trilogy Regarding the Right to a Jury Trial in Suits Filed in Bankruptcy Court

The Supreme Court of the United States has issued three opinions as to when a party to a dispute in bankruptcy court has no right to a jury trial. In *Katchen v. Landry*, 382 U.S. 323 (1966), the Court held that an objection to a proof of claim was a summary proceeding over which no jury trial attached. *Id.* In *Granfinanciera, S.A. v. Nordberg*, 442 U.S. 33 (1989), the Court reiterated this principle by holding that "[a]lthough a petitioner might be entitled to a jury

---

[2] The concept of "arguable property" of the estate was first articulated by the Fifth Circuit in *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir. 2005). This Court will subsequently discuss in this opinion how this concept is applicable to the dispute at bar.

trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity." *Id.* at 58 (quoting *Katchen*, 382 U.S. at 336) (internal citations omitted). Soon thereafter, the Court, in *Langenkamp v. Culp*, 498 U.S. 42 (1990), citing both *Katchen* and *Granfinanciera*, held that:

> . . . by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee that action becomes part of the claims-allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. As such, there is no Seventh Amendment right to a jury trial.

*Id.* at 44-45 (internal citations omitted).

   *Katchen*, *Granfinanciera*, and *Langenkamp*, taken together, indicate that a creditor or party-in-interest who voluntarily files a claim against the bankruptcy estate thereby loses the Seventh Amendment right to a jury trial if the trustee subsequently objects to the claim or seeks some other affirmative relief relating to the claim (hereinafter referred to as the Trilogy holding).[3]

---

[3]The District Court, in *Mirant Corp., v. The Southern Co.*, 337 B.R. 107 (N.D.Tex, 2006), has interpreted *Katchen*, *Granfinanciera*, and *Langenkamp* differently than this Court. In *Mirant*, in finding that filing a proof of claim does not necessarily waive a party's right to a jury trial in an adversary proceeding, the District Court stated that "courts must indulge in a presumption against waiver of the Seventh Amendment right to a jury trial," and, because of this, a party filing a proof of claim must "knowingly, voluntarily, and intelligently" waive his right to a jury trial in order to actually effect the waiver of his right to a jury trial. This Court can see no way to harmonize its own interpretation of *Katchen*, *Granfinanciera*, and *Langenkamp* with the District Court's interpretation, in *Mirant*, of these three cases.

   This Court has favorably cited *Mirant* in a previous opinion – *Johnson v. Williamson (In re British American Properties)*, 369 B.R. 322, 330-32 (Bankr. S.D.Tex. 2007). Thus, the Court takes this opportunity to clarify its purpose for relying on *Mirant* in *British American Properties* and resolve what may appear to be a contradictory treatment of *Mirant* in the dispute at bar. In *British American Properties*, this Court relied on *Mirant* for the wholly uncontroversial proposition that the authority of the bankruptcy court is rooted in the restructuring of the debtor-creditor relationship and the process of the allowance or disallowance of claims. *See British American Properties*, 369 B.R. at 332; *See also Langenkamp v. Culp*, 498 U.S. at 44-45 (". . . by filing a claim against a bankruptcy estate the creditor triggers the

## C. Extension of the Trilogy to Counterclaims Filed in Response to Suits Brought by Bankruptcy Trustees.

The Trilogy holding is based upon a specific chronological fact pattern: first, a creditor or party-in-interest files a claim against the bankruptcy estate; and second, the trustee objects to the claim or seeks some other affirmative relief against the claimant (such as a complaint to recover a preference under § 547 or a complaint to recover a fraudulent conveyance under § 548).[4]

Suppose, however, the fact pattern is reversed: first, the trustee files a complaint against a named defendant (who has not yet filed any proof of claim against the estate); and second, in response to the trustee's complaint, the defendant files a claim against the estate in the form of a counter-claim against the trustee. Does the Trilogy holding apply to this fact pattern? Does the defendant lose the right to a jury trial by virtue of having filed a counterclaim against the trustee? Stated differently, when a party is dragged into a bankruptcy court against its will (rather than voluntarily filing a claim as in the Trilogy fact pattern), should that party lose his right to a jury

process of the 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power."); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71 (1982) ("[T]he restructuring of debtor-creditor relations . . . is at the core of the federal bankruptcy power . . . ."). In so doing, this Court agreed with *Mirant* for the proposition that certain claims made by non-bankrupt parties in an adversary proceeding may not implicate the bankruptcy court's power to readjust debtor-creditor relationships or the process of the allowance or disallowance of claims – *i.e.*, that there are outer limits to the processes of readjusting the debtor-creditor relationship and the allowance or disallowance of claims. *See British American Properties,* 369 B.R. at 332 ("Inherent in the notion of adjusting the debtor-creditor relationship is the existence of such a relationship on the date of filing.")

However, although this Court agreed at that time with *Mirant* on this specific conclusion of law, it did not rely on the District Court's interpretation, in *Mirant,* of *Katchen, Granfinanciera,* and *Langenkamp* ; and *British American Properties* does not stand for the propositions, advanced in *Mirant,* that: (1) courts must indulge in a presumption against waiver of the Seventh Amendment right to a jury trial above and beyond any presumptions already accounted for in *Katchen, Granfinanciera,* and *Langenkamp* themselves; or (2) a non-bankrupt defendant who has already filed a proof of claim must, in addition to the act of filing this claim, take other steps to "knowingly, voluntarily, and intelligently" waive his right to a jury trial in order to actually effect a waiver of his right to jury trial.

[4]Any reference hereinafter to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (*i.e.* §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule" or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

trial if he responds with a counterclaim against the estate? The case law is split on the answer to this question.

1.   Opinions Discussing Why a Defendant Who Has Filed a Counterclaim Has Not Lost the Right to a Jury Trial.

The key case cited by Zimmern's counsel at the hearing is *In re Larsen*, 172 B.R. 988 (D. Utah 1993). Indeed, Zimmern emphasized that the facts in *Larsen* are "on all fours" with the facts in the dispute at bar, and that this Court should adopt the reasoning and holding of *Larsen*. There, the plaintiff filed an interpleader action in the Utah bankruptcy court. The named defendants were two Chapter 7 trustees (for two separate and distinct Chapter 7 estates), plus two individuals and one corporation. *Id.* at 990-91 Thereafter, one of the trustees filed a cross-claim against the defendant corporation and an individual defendant, who both then filed a counter-cross-claim against the trustee. *Id.* All of these parties asserted a claim against the $27,000 that the plaintiff had interpleaded. *Id.* The trustee who had filed the cross-claim, and thereafter had been countersued by the parties against whom he had cross-claimed, argued that the counter-cross-claim constituted a claim against the chapter 7 estate; and that, therefore, the individual counter-cross-claimants had no right to a jury trial under the Trilogy holding. *Id.* at 991-92.

The court rejected the trustee's argument by expressly concluding that the filing of a counterclaim (or cross-claim) against the estate is *not* the equivalent of filing proof of claim. The *Larsen* court's holding could not be clearer:

> The *Langenkamp* Court explained why the filing of a proof of claim subjects a creditor to the equity jurisdiction of the bankruptcy court for the adjudication of counterclaims filed by the trustee: "By filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting [itself] to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the

10

claims-allowance process which is triable only in equity."

On the other hand, when the trustee, or a third party, files a jury-triable action, and the defendant files an answer containing a jury demand, the defendant's right to a jury trial has accrued. If the defendant concurrently with the answer, or subsequently, files a counterclaim or cross-claim against the estate in connection with the same subject matter, the counterclaim or cross-claim becomes a part of the jury trial process. The claims allowance process is never triggered.

An interpleader action, including cross-claims filed therein against a trustee, is not a proof of a claim. The claims allowance process is not involved. The contest is over identified funds, the ownership of which are in dispute. That contest does not involve a claim for a share of estate assets.

The Defendants made timely demand for a jury trial. Their right to a jury trial of the legal issues in the dispute has accrued. The Defendants are entitled to a jury trial of the legal issues.

*Id.* at 993 (internal citations omitted).

In his Post-Hearing Memorandum of Law, Zimmern's counsel cites two other cases supporting the *Larsen* holding that the filing of a counterclaim does not foreclose a defendant's right to a jury trial.

One is *Beard v. Braunstein*, 914 F.2d 434 (3rd Cir. 1990). There, the Third Circuit held that the defendant sued by the Chapter 7 trustee for breach of a lease did not waive his right to a jury trial by filing a compulsory counterclaim for damages caused by the poor condition of one of the rented properties. The Third Circuit, in reversing the district court's affirmance of the bankruptcy court's ruling, expressed the view that to find such a waiver "is something less than fair play." *Id.* at 442. The Third Circuit apparently came to this conclusion because the defendant had not filed a proof of claim and because the counterclaim was compulsory. *See In re NDEP Corp.*, 203 B.R. 905, 911 (D. Del. 1996) ("*Beard* does address that situation, but relies partially upon the

compulsory nature of the counterclaim asserted by the defendant.").

The second case which Zimmern cites in support of the *Larsen* holding is this Court's opinion in *British American Properties*. In that case, this Court held that a defendant who had not filed a proof of claim (just like Zimmern in the suit at bar), and who also had filed a counterclaim (just like Zimmern in the suit at bar), was nevertheless still entitled to a jury trial. This Court will discuss its ruling in this case at length subsequently in this opinion. For now, suffice it to say that it is certainly understandable why Zimmern cited this case in his support.

In sum, Zimmern relies heavily on *Larsen* because it is "on all fours." And, he rightfully cites *Beard* and *British American Properties* in further support of his position that he is entitled to a jury trial.

Finally, this Court has found another on-point case, not cited by Zimmern, where a claim or counterclaim for interpleaded funds was held not to have waived a defendant's right to a jury trial – *In re Peanut Corp. of Am.*, 407 B.R. 862 (W.D. Va. 2009). *Peanut* is as close to being on "all fours" with the dispute at bar as any case this Court can find. In *Peanut*, the Peanut Corporation of America (PCA), the Debtor, held a directors' and officers' insurance policy with Federal Insurance Company (FIC). *Id.* at 864. FIC, anticipating that claims against the insurance policy would exceed the maximum aggregate liability limit on the policy due to allegations that peanut products manufactured by PCA contained salmonella, filed an interpleader action in bankruptcy court "to determine the allocation of the proceeds among the individuals insured by the policy." *Id.* One of the individual defendants, Parnell, filed an answer, a statement of claim to the interpleaded funds, a counterclaim, and a motion to withdraw the reference. In response to Parnell's motion to withdraw the reference, the Chapter 7 trustee argued that the reference should

12

not be withdrawn because, *inter alia*, "Parnell consented to Bankruptcy Court Jurisdiction and thus waived his right to seek withdrawal by filing a statement of claim and counterclaims in response to the adversary proceeding." *Id.* In holding that permissive withdrawal of the reference was appropriate, the District Court concluded that Parnell had not waived his right to a jury trial by filing his statement of claim to the interpleaded funds along with additional counterclaims. *Id.* The only explanation that the District Court provides for this conclusion is the Shermanesque statement that he declined to hold that Parnell's right to a jury trial was waived because the pattern in which Parnell filed his pleadings "evidenced Parnell's desire to preserve his right to make such claims despite filing the Motion to Withdraw Reference - not his implicit consent to Bankruptcy Court Jurisdiction." *Id.* at 866 n.2.

2.   Opinions Discussing Why a Defendant Who Has Filed a Counterclaim Has Lost the Right to a Jury Trial.

Several other courts completely disagree with the *Larsen* holding. For instance, the District Court for the District of Utah, in *In re Americana Expressways, Inc.*, 161 B.R. 707 (D. Utah 1993), held that the defendant's "'defense'" really represented a counterclaim, and thus the defendant had waived his right to a jury trial. *Id.* 713-14 at  There, the trustee initiated an adversary proceeding seeking to recover undercharges for freight transportation in violation of §10761 of the Interstate Commerce Act from the defendant. *Id.* at 708. The defendant answered by asserting a variety of defenses, including the contention that the trustee's claim was barred by unreasonableness pursuant to §11705(b)(3) of the Interstate Commerce Act. Under this statute, shippers have "an express cause of action for damages in the amount of the difference between the tariff rate and the rate determined to be reasonable by the Interstate Commerce Commission." *Id.*

13

at 713. The court found that "[b]ecause the rate ultimately determined by the ICC to be reasonable may be less than the amount paid to the carrier, the shipper may be entitled to affirmative relief against the carrier." *Id.* Because the defendant's answer did not limit the relief it sought to merely offsetting any liability it may have had as a result of failing to pay the debtor at the filed rate, the court found that the assertion of the defense of "unreasonableness" under §11705(b)(3) of the Interstate Commerce Act was, in reality, a claim against the estate. *Id.* Citing *Langenkamp* and *Granfinanciera*, the court held that because the defendant had made a claim against the estate, the trustee's turnover action had become integral to the restructuring of the debtor-creditor relationship, and, therefore, the defendant had submitted to the bankruptcy court's equity jurisdiction and was not entitled to a jury trial. *Id.*

In *Roberds, Inc. v. Palliser Furniture*, 291 B.R. 102 (S.D. Ohio 2003), the debtor-in-possession brought an adversary action against the defendant to recover alleged preferences paid to the defendant in the ninety days preceding the debtor's bankruptcy filing. *Id.* at 104. In response, the defendant counterclaimed, seeking administrative expenses for post-petition sales, including an offset for amounts owed to the debtor-in-possession. *Id.* at 105-06. The court found that the defendant's counterclaim divested it of the right to a jury trial, even though the defendant did not seek a pre-petition claim.

In *Schwinn Bicycle Co. v. AFS Cycle & Co. Ltd*, 184 B.R. 945 (Bankr. N.D. Ill. 1995), the plan committee brought a preference action against a number of the parties to recover settlement payments they had received from the debtor within 90 days before the debtor filed its petition. Id. at 947-48. Of this group of defendants, a particular individual defendant held no claim against the debtor as of the date of the filing of the debtor's petition and was not listed as a creditor in the

debtor's bankruptcy schedules. *Id.* at 947. This defendant answered and asserted a counter-claim

against the committee seeking damages for the debtor's alleged breach of their settlement

agreement, and also demanding a jury trial. *Id.* The court found that the defendant's counterclaim

was a claim against the estate, and, thus, the defendant had submitted to the equity jurisdiction of

the bankruptcy court and lost her right to a jury trial. In so doing, the court criticized the *Larsen*

holding, stating that the temporal distinction made by the court in that case "misreads

*Langenkamp*":

> In *Langenkamp*, the creditors submitted to the bankruptcy court's jurisdiction with
> regard to the preference action, despite the fact that the preference action was not
> asserted as an objection to a proof of claim, but rather as an independent adversary
> proceeding. In so holding, the Supreme Court focused "not on the procedural
> posture in which the trustee's action was asserted, but on the creditor's submission
> to the bankruptcy court's equity jurisdiction. In that regard, it is the fact of the
> creditor's claim against the estate that is important, not the procedural posture of
> the trustee's action or the timing of the creditor's claim."

*Id.* at 952 (internal citations omitted).

In the suit at bar, the Trustee, in his Motion to Strike, cites a case for the proposition that a

party who files a claim against the bankruptcy estate triggers the process of allowance and

disallowance of claims and invokes the bankruptcy court's equitable powers. For example, in *In

re Hudson*, 170 B.R. 868, 870 (E.D.N.C. 1994), the trustee filed a complaint asserting that the

defendant had failed to pay the debtor $67,000 under the parties' contract. In response, the

defendant filed an answer and a counterclaim denying that the defendant owed money to the

debtor for a variety of reasons, and seeking "a sum to be assessed by a jury in order to

compensate this [d]efendant for its losses as alleged . . . ." *Id.* In its answer and counterclaim, the

defendant also demanded a jury trial. The court, noting that "the Supreme Court's focus in *Langenkamp* was not on the procedural posture [of] the trustee's action . . . , but on the creditor's submission to the bankruptcy court's equity jurisdiction," found that the defendant had submitted to the bankruptcy court's equity jurisdiction in filing its answer and counterclaim, "even though the case does not involve issues of preferences or fraudulent conveyances, and even thought the defendant did not file any claim with the bankruptcy court before the trustee filed his complaint." *Id.* at 875.

The Trustee also cites *Hudson* for the proposition that a party filing a counterclaim in response to a claim by a trustee submits himself to the equitable jurisdiction of the bankruptcy court and waives his right to a jury trial. The Trustee cites three other cases for this proposition as well. The first is *In re Lloyd Securities, Inc.*, 156 B.R. 750 (Bankr. E.D. Pa. 1993). There, the court found that by filing his counterclaim, the defendant waived his right to a jury trial for two reasons: (1) because his counterclaim sought "affirmative relief against the Debtor/Trustee" (and is therefore a claim against the estate); and (2) the counterclaim was based on pre-petition claims of the defendant (and thus was, again, a claim against the bankruptcy estate). *Id.* at 754.

The second case is *In re Warmus*, 252 B.R. 584 (Bankr. S.D. Fla. 2000). There, the defendants filed an answer to the trustee's complaint, "including counterclaims against the trustee, and by implication, the Warmus Bankruptcy Estate, for fraud." *Id.* at 586. The defendants argued that the counterclaim should not constitute a waiver of the defendant's right to a jury trial because the counterclaim was compulsory. *Id.* at 587. The court found this argument to be inapposite, stating: "[t]he [c]ourt finds that the mandatory or permissive nature of the [c]ounterclaim is irrelevant because the [c]ounterclaim seeks damages from the estate, which is subject to the

16

bankruptcy court's equitable powers." *Id.* at 588.

The third case is *In re Commercial Fin. Servs., Inc.*, 251 B.R. 397 (Bankr. N.D. Okla. 2000). That case is very similar to *In re Americana Expressways, Inc.*, in that the defendant did not explicitly make a counterclaim, but the defendant did raise an affirmative defense of setoff. *See id.* at 400. There, the court found that from a "logical and equitable standpoint," a defendant cannot assert that he and the debtor have "mutual debts and claims" for the purpose of setoff without asserting a claim against the estate." *Id.* at 406-407. As a result, the court found that in asserting a defense of setoff, the defendant consented to the equity jurisdiction of the bankruptcy court. *Id.* at 408.

In sum, many courts have held that a counterclaim against the estate (or property of the estate) serves as the functional equivalent of a proof of claim, and therefore that filing a counterclaim constitutes a waiver of the right to a jury trial and consent to the equity jurisdiction of the bankruptcy court.

**D. Zimmern has made a claim against the bankruptcy estate and is not entitled to a jury trial.**

This Court concludes that Zimmern, in filing his Counter-Cross-Claim [Adv. Doc. No. 17], has waived his right to a jury trial by filing a claim against Endeavour's estate. In reaching this conclusion, the Court relies on both: (1) the Trilogy holding (and subsequent cases cited above applying the Trilogy holding in Conclusions of Law section C(2)); and (2) the Fifth Circuit's doctrine of "arguable property" of the bankruptcy estate. The Fifth Circuit's doctrine of "arguable property" and this Court's application of this doctrine to the suit at bar is described below.

17

1.  "Arguable Property" of the Bankruptcy Estate is Presumed to be Property of the Bankruptcy Estate.

In *Chesnut*, the Fifth Circuit introduced the concept of "arguable property" of the estate. 422 F.3d at 300. "Arguable property" of the estate is property in "which the debtor has only an arguable claim of right." *Id.* When property is determined to be "arguable property" of the estate, it should be presumed to be property of the estate. *In re Global Outreach, S.A.*, No. 09-15985, 2009 Bankr. LEXIS 1602, at * 21 (Bankr. D.N.J. June 8, 2009) ("[T]he Fifth Circuit determined that 'arguable property' should be presumed to be property of the estate.") (citing *Chesnut*, 422 F.3d at 303); *see also STFG, Inc. v. Int'l Bank of Commerce (In re S.T.F.G., Inc.)*, Adv. No. 07-5005, 2008 Bankr. LEXIS 1491, at * 7 (Bankr. S.D. Tex. Apr. 14, 2008); *In re Levelnstein*, 371 B.R. 45, 48 (Bankr. S.D.N.Y. 2007).

The dispute in this adversary proceeding relates to "arguable property" of Endeavour's estate – *i.e.*, the Earnest Money – as both the Trustee and Zimmern have asserted claims to these interpleaded funds. [Finding of Fact No. 13, 14, 17, & 18]. Claims related to interpleaded funds qualify as "arguable property" of the estate. *See In re Dugas*, No. 94-10027, 2009 Bankr. LEXIS 3231, at * 36–37 (Bankr E.D. Tex. Oct. 13, 2009). Accordingly, the Earnest Money in this Adversary Proceeding constitutes "arguable property" of the estate, and, therefore, is presumed property of Endeavour's estate.

Because the Earnest Money, as "arguable property," is presumed to be property of Endeavour's estate, it logically follows that a counterclaim seeking title to and possession of the Earnest Money constitutes a counterclaim against Endeavour's estate. As indicated in the analysis above, the majority of the cases applying the Trilogy holding have held that filing a

18

counterclaim against the estate is the equivalent of filing a proof of claim (*i.e.*, it begins the process of the allowance or disallowance of claims that is the exclusive purview of the bankruptcy court). Therefore, in adherence to the Trilogy holding, this Court concludes that Zimmern's filing of a counterclaim against the Trustee (*i.e.*, the representative of Endeavour's Chapter 11 estate) represents a consent to the equity jurisdiction of this bankruptcy court and a waiver of the right to a jury trial. By making this conclusion, this Court necessarily rejects the holding of *Larsen* that the filing of a counterclaim is not the equivalent of filing a proof of claim.[5] Accordingly, Zimmern, by filing a counterclaim asserting a right to property of Endeavour's bankruptcy estate, performed the equivalent of filing a proof of claim and, accordingly, waived his right to a jury trial.

2.  Precedent for Application of the Fifth Circuit's "Arguable Property" Doctrine in the Analysis of Whether Zimmern Has a Right to a Jury Trial.

   The Fifth Circuit's development of the "arguable property" doctrine is fairly recent, as it was introduced in *Chesnut* in 2005. To this Court's knowledge, this particular doctrine has not previously been used in the context of determining whether a claimant has waived its right to a jury trial; therefore, this Court's application of this doctrine in the suit at bar is new. However, there is precedent standing for the proposition that even though an asset is not definitively property of the bankruptcy estate, a claimant who asserts rights to that asset loses his right to a jury trial. In *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478 (1940), the bankruptcy court, although not using the phrase "arguable property," treated disputed oil rights claimed by the trustee as part of the bankruptcy estate while the dispute was in contention, and asserted summary

---

[5] This Court must also necessarily reject the holding in *Peanut* because its conclusory explanation of why the defendant in that suit did not waive his right to jury trial by filing a proof of claim and counterclaims against the estate appears to completely disregard the precedent of the Trilogy holding.

jurisdiction[6] over the ownership dispute itself. *Id.* at 479. The facts of *Thompson* are as follows:

> A rich oil field was discovered in Illinois in 1938. Thereupon, this dispute arose between a trustee of a railroad in reorganization . . . , and other claimants as to the legal right to drill for and capture fugitive oil under the railroad's right of way traversing the newly discovered field. The trustee asserts fee-simple ownership of the right of way lands with consequent right to reduce the underlying oil to possession. Respondents deny the trustee's alleged title or that he has any interest in the land beyond a mere easement – a limited right to use the surface for railroad purposes only. They allege that ownership of the fee is in others, from whom they have obtained oil leases. This determinative question of fee simple ownership can be decided only by interpretation, under Illinois law, of instruments granting the railroad its right of way.

*Id.* at 479.

The Supreme Court, in answering the question of "whether the bankruptcy court has summary jurisdiction to adjudicate ownership of the right of way lands, and whether that court abused its discretion in ordering the fugitive oil captured and its proceeds impounded pending adjudication of the ownership," accepted the rulings of the bankruptcy court, holding that: (1) "[b]ankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession;" (2) "[w]e are of the opinion that it was not an abuse of discretion for the bankruptcy court to authorize the trustee to protect all interests – so far as it appeared possible to do so – by preserving the oil, from waste and depletion, through its extraction and sale with the net proceeds to be impounded until final determination of the controversy over title to the right of way lands;" and (3) "[a] court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession." *Id.* at 479. In so holding, the Supreme Court effectively paves the way for both the Fifth Circuit's current use of

---

[6]Under the applicable law at that time, when a bankruptcy court had summary jurisdiction over a suit, no party was entitled to a jury trial. *See Katchen v. Landy*, 382 U.S. 323, 337-38 (1966).

the "arguable property" for the purposes of the automatic stay, and this Court's use of "arguable property" in the context of the jurisdiction of the bankruptcy court.

The Supreme Court's ruling in *Thompson* that "[b]ankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession" holds particular importance in the context of the Trilogy holding. This exact language was echoed by the Court in *Katchen. See Katchen v. Landy*, 382 U.S. 323, 330 (1966) (quoting *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481 (1940)). Then, in *Granfinanciera,* the Court acknowledged that "[o]ur decision [in *Katchen*] turned . . . on the bankruptcy court's having "actual or constructive possession of the bankruptcy estate, and its power and obligation to consider objections by the trustee in deciding whether to allow claims against the estate." *Granfinanciera,* 492 U.S. 33, 57 (1989) (citing *Katchen,* 382 U.S. at 330 (quoting *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481(1940)). The rationale of *Thompson* is the keystone of the Trilogy holding. Viewing *Thompson* through the lens of the Trilogy holding, it stands for the proposition that claims against certain property that is *arguably* property of the bankruptcy estate (*i.e.*, property that is in "constructive possession" of the bankruptcy court) should be treated just like claims against the bankruptcy estate – under the equity jurisdiction of the bankruptcy court and without a jury trial.

Indeed, the Supreme Court's definition of property under constructive possession of the bankruptcy court encompasses the situation currently before this Court, where the Title Company has possession of the Earnest Money, but makes no claim to it, and further, has requested to deposit the Earnest Money in the Court Registry. In *Taubel-Scott-Kitzmiller Co., Inc., v. Fox (In re Cowen Hosiery Co., Inc.)*, 264 U.S. 426, 433 (1924) the Supreme Court explicitly stated that

the bankruptcy court has constructive possession of property "where the property is held by some other person who makes no claim to it." *See also In re American Fidelity Corp.*, 28 F.Supp. 462, 467 (S.D. Cal. 1939). Under this language, interpleaded property falls squarely into the category of property in constructive possession of the bankruptcy court as discussed by *Thompson*, *Katchen*, and *Granfinanciera*. Thus, pursuant to the Trilogy holding, it is appropriate for this Court to treat claims against interpleaded property as claims against the bankruptcy estate (*i.e.*, treat "arguable property" as property of the estate, and treat claims against "arguable property" as claims against the bankruptcy estate); and, as such, a claim against interpleaded funds initiates the process of the allowance or disallowance of claims against the estate, and the claimant is not entitled to a jury trial for the adjudication of the claim against the interpleaded property.

The Court recognizes that *Thompson* is a 70-year old case dealing with procedural and jurisdictional constructs which may no longer have perfect present-day analogs due to the Bankruptcy Act of 1978's abolition of the summary/plenary jurisdiction distinction. *See Granfinanciera*, 492 U.S. 33, 60 (1989) ("The 1978 Act abolished the statutory distinction between plenary and summary bankruptcy proceedings . . . . Whether 28 U.S.C. §1411(1982 ed., Supp. V) purports to abolish jury trial rights in what were formerly plenary actions is unclear . . . ."). Nevertheless, the Court finds *Thompson* instructive for two reasons: (1) *Granfinanciera*, which was issued after the Bankruptcy Act of 1978, retains *Thompson*'s language on "actual and constructive possession" and demonstrates that the rationale of *Thompson* squares with today's Code; and (2) *Thompson* demonstrates that this Court's use of the Fifth Circuit's "arguable property" doctrine to bring "arguable property" (*i.e.*, the Earnest Money) into the bankruptcy estate has precedential equivalent reaching back to at least the mid-20th century.

22

Moreover, the conclusion the Court reaches today is critical to the proper functioning of the bankruptcy system. Disputes over ownership of property which is "arguable property" of the bankruptcy estate must be adjudicated expeditiously so that: (1) the composition of the estate can be determined; (2) the trustee can fulfill his duties (*i.e.*, liquidate assets and pay claims); and (3) the case can be closed in a timely manner. These objectives would simply not be possible with the attendant delays of the withdrawal of the reference so that a jury trial can take place. To hold otherwise would open the door to allow a single party to interrupt the process of administering the bankruptcy estate and paying claims, and force the bankruptcy court, the trustee, and all creditors, to await the results of a jury trial by simply challenging the bankruptcy estate's legal or equitable interest in property and demanding a jury trial. Such a result would be antithetical to the policies underpinning the Code, and would interfere with the equity jurisdiction of the bankruptcy courts. *See Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1329 (2d. Cir. 1993) ("If an equitable reordering [of debtor-creditor and creditor-creditor relations] cannot be accomplished without resolution of what would otherwise be a legal dispute, then that dispute becomes an essential element of the broader equitable controversy.") The Supreme Court has recognized that the bankruptcy courts' "power to allow or to disallow claims includes 'full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand of a claim against the estate is based. This is essential to the performance of the duties imposed upon it.'" *Katchen v. Landy*, 382 U.S. 323, 330 (1966) (quoting *Lesser v. Gray*, 236 U.S. 70, 74 (1915)). This Court sees no reason why determination of the actual composition of the estate is any less essential to the performance of its duties than inquiry into claims against that same bankruptcy estate. Indeed, one of the chief goals of the Code is to allow the bankruptcy court to fairly and

expeditiously administer the bankruptcy estate so that claims can be paid in a timely manner and

the debtor can receive discharge. *Katchen*, 382 U.S. at 328-29. This purpose will not be realized

if jury trials must be conducted in order to determine the composition of the bankruptcy estate; as

stated by the Supreme Court in *Katchen*:

> . . . this Court has long realized that a chief purpose of the bankruptcy laws is to
> 'secure a prompt and effectual administration and settlement of the estate of all
> bankrupts within a limited period,' and that provision for summary disposition
> 'without regard to usual modes of trial attended by some necessary delay,' is one
> of the means chosen by Congress to effectuate that purpose . . . .

*Id.* (internal citations omitted).

### E. Distinguishing *British American Properties* From the Suit at Bar.

Having concluded that Zimmern does not have a right to jury trial for the reasons set forth

above, this Court feels compelled to distinguish its holding in *British American Properties* from

the instant holding. The Court does so because Zimmern makes a well reasoned argument that

this Court's holding in *British American Properties* should govern the suit at bar. Zimmern makes

this argument because in that adversary proceeding, this Court held that a defendant who had not

filed a proof of claim (just like Zimmern in the suit at bar), and who also had filed a counterclaim

(just like Zimmern in the suit at bar), was nevertheless still entitled to a jury trial. *See* 369 B.R.

322 (Bankr. S.D.Tex. 2007).

There, the Chapter 7 trustee sued an individual who had not filed a proof of claim. *Id.* at 324.

The trustee's suit was brought pursuant to 11 U.S.C. § 544 for a fraudulent conveyance under

state law. *Id.* 324-25. The defendant, who had not filed a proof of claim (and who was not a

creditor), then filed a 20-page pleading entitled "Answer and Counterclaim." [Adv. Proc. No. 06-

03695, Docket No. 6]. This pleading contains 61 paragraphs, the first 59 of which constitute rule

24

12(b) defenses, the answer, and affirmative defenses. *Id.* Then, right before paragraph 60, the

pleading has a subsection entitled "COUNTERCLAIM." Paragraphs 60 & 61 read, in pertinent

part, as follows:

> 60.    . . . As a Counterclaimant, this Defendant seeks all remedies against the
> Trustee and the Estate to which she is entitled to under the facts, transactions
> and occurrences alleged in her Answer and Counterclaim. Among other things,
> this Defendant and Counterclaimant seeks to enforce the liens and equities
> given her by the TUFTA and the Bankruptcy Code, including, but not limited
> to the liens for the value given for her payment, and provisions of security for,
> the indebtedness of the Debtor to Central Bank.
>
> 61.    In any proceeding under the TUFTA the court may award costs and reasonable
> attorney's fees, as are equitable and just. An award of costs or attorney's fees
> to the Trustee will be neither equitable nor just. However, this Defendant and
> Counterclaimant is entitled to and hereby seeks an award of costs and
> reasonable attorney's fees from the estate for her defense of this suit and
> prosecution of this counterclaim.

*Id.*[7]

This Court, in concluding that the filing of the defendant's so-called counterclaim did not

waive her right to a jury trial, noted the following points: (1) the defendant was *not* a creditor of

the estate on the date of the filing of the debtor's petition; (2) the defendant had never filed a proof

of claim, *i.e.*, the defendant had never asserted that she held a claim that arose *pre-petition*[8]; and

(3) whatever counterclaims the defendant asserted arose not *pre-petition* (even though the

---

[7]TUFTA is an acronym for the "Texas Uniform Fraudulent Transfer Act."

[8]Official Form 10, which is contained in the Federal Bankruptcy Rules, is the proof of claim form. This form expressly states, in bold print, that the claimant should set forth the **"Amount of Claim as of Date Case Filed."** Thus, any claimant filing a proof of claim may assert only a claim for a debt arising pre-petition. Claims arising post-petition should not be included in the proof of claim. *See In re Pride Cos. L.P.*, 285 B.R. 366, 373 (Bankr. N.D.Tex. 2002) (noting that a creditor's claim is calculated as of the date of the filing of the bankruptcy petition and does not include fees and other amounts arising post-petition). Rather, a party asserting a post-petition claim should file an application with the court and request an order establishing the claim as an allowed administrative claim or an allowed post-petition claim pursuant to a particular statute (such as § 506(b)).

transfers occurred pre-petition), but rather *post-petition* because the counterclaims were statutory liens provided by TUFTA as affirmative defenses which could not have accrued until the trustee actually filed suit. *Id.* at 26. Indeed, in a footnote, this Court concluded that even though the defendant used the term "COUNTERCLAIM" in the pleading, the actual language and applicable law reflected that she was raising an affirmative defense, not a counterclaim against the estate. *Id.* at 26 n.8. Nor did this Court accept the trustee's argument that the defendant's request for attorney's fees in paragraph 61 constituted a counterclaim; the Court's view was that any such fee award would have been solely a claim arising *post-petition*. In sum, this Court emphasized that in assessing whether a defendant's filing of a counterclaim constitutes a waiver of a jury trial (or, stated differently, a knowing consent that the bankruptcy court may adjudicate the counterclaim), it is important to focus on whether the counterclaim arose *pre-petition* or *post-petition. See British American Properties,* 369 B.R. 322, 331-32 (Bankr. S.D. Tex. 2007) ("Not every counterclaim . . . will involve the process of the allowance or disallowance of prepetition claims or invoke the equitable power of the bankruptcy court to adjust the debtor-creditor relationship. Inherent in the notion of adjusting the debtor-creditor relationship is the existence of such a relationship on the date of filing."). The Court took this approach because the Trilogy holding, and its progeny, have linked the waiver of a jury trial to the filing of a proof of claim – and, as already noted in footnote 8, a proof of claim may only assert a claim arising pre-petition.

The suit at bar is distinguishable from *British American Properties* by this very principle – Zimmern's dispute with Endeavour, and therefore its claims against Endeavour, arose *pre-petition,* whereas the defendant's claim in *British American Properties* arose *post-petition.* Zimmern asserts that his right to the Earnest Money arises as a consequence of Endeavour's failure to close on the

sale of the condominium. [Docket No. 17]. Paragraph 10 of the Complaint unequivocally states that "the [Contract] failed to close prior to Endeavour's initiation of these bankruptcy proceedings, and the Title Company still retains possession of the Deposit." Zimmern's Answer and Cross-Claim admits this assertion. [¶ 10, Docket No. 1]. As such, Zimmern's claim to the Earnest Money arose pre-petition, and is a pre-petition claim. Moreover, because Zimmern's claim is pre-petition and the Earnest Money is "arguable property" of Endeavour's bankruptcy estate, it directly implicates the process of the allowance or disallowance of claims. Additionally, Zimmern's claim implicates this Court's equitable power to adjust the debtor-creditor and creditor-creditor relationships because it directly bears upon the composition of the bankruptcy estate, which must be determined before, *inter alia*, the pre-petition claims of creditors can be paid. Accordingly, the suit at bar is clearly distinguishable from *British American Properties* because the key fact in that suit – that the defendant had solely a post-petition claim that implicated neither the process of the allowance or disallowance of claims, nor the Court's power to readjust debtor-creditor relationships[9] – is not present here.

## F. What Should Zimmern Have Done to Preserve His Right to a Jury Trial?

With this Court having concluded that Zimmern has waived his right to a jury trial by counter-cross-claiming against the Chapter 11 Trustee for "arguable" property of the bankruptcy estate (*i.e.*, the Earnest Money), Zimmern and his counsel – and, for that matter, any attorney who finds himself or herself representing a party similarly situated to Zimmern – may rightfully ask: what should have been done differently to preserve the right to a jury trial? This Court feels compelled

---

[9] *i.e.*, The power to adjust the pre-petition debtor-creditor relationship.

27

to attempt to respond to this issue given the very difficult area of the law.

This Court believes that there are probably two alternative paths that Zimmern could have pursued which might have preserved his right to a jury trial in this dispute. Zimmern could have: (1) filed a motion to abstain along with solely an original answer and demand for a jury trial; or (2) filed solely an original answer with a demand for a jury trial.[10] These alternative paths of action are addressed in turn.

### 1. File a Motion to Abstain and an Original Answer with a Demand for Jury Trial.

In the first alternative path, Zimmern could have filed a motion for this Court to abstain and an original answer to both the Complaint and the Cross-Claim (together, the Original Answer)[11], with a demand for jury trial.[12] "Permissive abstention is authorized statutorily by 28 U.S.C. § 1334(c)(1) as a reflection of the United State's Supreme Court's decision in Marathon that non-Article III bankruptcy courts should not determine contract claims based on state law." *In re*

---

[10]An original answer in response to both the Complaint and the Cross-Claim must be filed under either path. A motion under Fed. R. Civ. P. 12 "alters the time in which an answer is due" until after the trial court "denies the motion or postpones the decision" *Cheshire v. Bank of America*, NA, No.09-10099, 2009 WL 3497732 at *2 (11th Cir. 2009); Fed. R. Civ. P. 12(a)(4)(A). However, the time to file an answer is not altered by any other type of motion, such as a motion to abstain. Hence, unless a defendant is filing a motion under Fed. R. Civ. P. 12, the defendant must file an answer when he files any motion not governed by Fed. R. Civ. P. 12; otherwise, the defendant risks having a default judgment taken against him. *See* Fed. R. Civ. P. 12(a).

[11]Both components of the Original Answer – the answer to Complaint and the answer to the Cross-Claim – should have done no more than simply admit or deny the allegations of the Complaint and the Cross-Claim. Zimmern needed to avoid expressly asserting that he had rights to the Earnest Money.

[12]There does not need to be a pending state court action for this Court to abstain from adjudicating a dispute. *See*, *In re Pickett*, 362 B.R. 794, 797-98 (Bankr.S.D. Tex. 2007) (this Court abstaining in favor of allowing state courts to resolve a dispute involving state law issues, where there was no pending state court suit on the issues before the Court). Rather, this Court can decide to abstain from adjudicating a dispute brought to this Court, and issue an order authorizing the party seeking abstention to proceed to state court to prosecute the suit. *See id.* at 799; *see also* (discussing abstention) *Fedders N.A. v. Branded Products, Inc. (in re Branded Products, Inc.)*, 154 B.R. 936, 952 (Bankr.W.D. Tex. 1993); *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925 (5th Cir. 1999); and *Lozano v. Swift Energy Co., (In re Wright)*, 231 B.R. 597 (Bankr. W.D.Tex. 1999).

*Encompass Servs. Corp.*, 337 B.R. 864, 877 (Bankr. S.D. Tex. 2006) (citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)). "Even after Congress statutorily placed the bankruptcy courts within the district courts through the 1984 Amendments, bankruptcy courts are not mandated to hear claims "related to" an underlying bankruptcy case when these claims fall under the statutory and case law considerations for permissive abstention." *In re Encompass Servs. Corp.*, 337 B.R. at 877 (citing *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 428 (Bankr. S.D. Tex. 1987)).

This Court has permissively abstained on several occasions in order to allow state courts to resolve disputes involving state law issues. *See, e.g, In re Hallwood Energy, L.P.*, Slip Copy, Adv. No. 09-03202, 2009 WL 2601294 (Bankr. S.D. Tex. 2009); *In re Pickett*, 362 B.R. 794 (Bankr.S.D. Tex. 2007); *In re Encompass Servs. Corp.*, 337 B.R. 864 (Bankr.S.D. Tex. 2006). Indeed, interpleader actions involving escrow agents depositing earnest money in the court registry, are, without question, regularly handled by state courts in Texas. *See, e.g., Land Title Co. v. Dubois*, No. 05-99-01122-CV, 2000 Tex. App. LEXIS 3358 (Tex.App.-Dallas 2000); *Olmos v. Pecan Grove Mun. Util. Dist.*, 857 S.W.2d 734 (Tex.App.-Houston [14th Dist.] 1993); *Downing v. Laws*, 419 S.W.2d 217 (Tex.Civ.App.-Austin 1967); *Cannon v. Arnold*, 467 S.W.2d 215 (Tex.Civ.App.–Amarillo 1971); *Foreman v. Graham*, 693 S.W.2d 774 (Tex.App.-Fort Worth 1985). Such actions have been subject to abstention in bankruptcy courts throughout this country. *American Airlines, Inc., v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (". . . it is well recognized that interpleader is an equitable remedy, and a federal court may abstain from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held doubly liable."); *See, e.g., Federated Mutual Ins. Co. v. Walco Oil Company, Inc. (In re Walco*

29

*Oil Co.),* 2008 Bankr. LEXIS 3173 (Bankr. S.D.Miss. 2008); *Hibernia Bank v. The Structured Advantage, Inc. (In re EOTL Systems, Inc.),* 2004 Bankr. LEXIS (Bankr. N.D.Tex. 2004). In the instant dispute, by filing a motion seeking permissive abstention, Zimmern would have avoided making a claim against the estate (and thus not waived his right to a jury trial), and would have potentially allowed Zimmern to obtain a jury trial in state court on the interpleader action over the Earnest Money. There is ample case law on abstention setting forth the factors Zimmern would have needed to focus on in order to persuade this Court to abstain from adjudicating the interpleader action filed by the Title Company. *See e.g., In re Pickett,* 362 B.R. at 797-98. If Zimmern had successfully prosecuted a motion to abstain, then he could have filed suit in Texas state court and received a jury trial.

## 2. File Solely an Original Answer and Demand for Jury Trial.

In the second alternative path, Zimmern could have solely filed the Original Answer and demanded a jury trial.[13] "A party demanding trial by jury must comply with the Rules of Civil and Bankruptcy Procedure in order to perfect their right to jury trial." *In re Ha-Lo Indus., Inc.,* 326 B.R. 116, 120 (Bankr. N.D. Ill. 2005) (citing Fed. R. Civ. P. 38; Fed R. Bankr. P. 9015). "Fed R. Civ. P. 38, incorporated herein by Fed. R. Bankr. P. 9015, requires that a party must 'demand a trial by jury of any issue triable of right by a jury . . . in writing any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue." *Id.* "The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury. Fed. R. Civ. P. 38; Fed R. Bankr. P. 9015. If a party, such as

---

[13]Both components of the Original Answer – the answer to Complaint and the answer to the Cross-Claim – should have done no more than simply admit or deny the allegations of the Complaint and the Cross-Claim. Zimmern needed to avoid expressly asserting that he had rights to the Earnest Money.

Zimmern, complies with these filing deadlines and does not commit any other acts constituting waiver (*e.g.*, filing a claim against arguable property of the estate), he will preserve his right to a jury trial. *See, e.g., In re Hassan*, 375 B.R. 637 (Bankr. D. Kan. 2006).

Thus, if Zimmern had not filed a counter-cross-claim against the Trustee, and instead had simply filed an original answer and demanded a jury trial, this Court would have been reluctant to strike Zimmern's request for a jury trial – which, in turn, would have led this Court to recommend that the District Court withdraw the reference of this dispute, as Zimmern has requested in the Motion to Withdraw.[14] Then, assuming the District Court accepted the undersigned judge's recommendation that the reference be withdrawn, Zimmern would have preserved his right to a jury trial.

In the first scenario – *i.e.*, where Zimmern could have filed a motion to abstain – Zimmern would not have had to worry about preserving his claim against the Trustee because, assuming the motion to abstain was granted, Zimmern would have then, as a plaintiff, filed suit in Texas state court. In the second scenario, however, where Zimmern has filed solely an answer with a demand for a jury trial, Zimmern might worry that by not also filing his counter-cross-claim, the Trustee would subsequently argue to the District Court (assuming the reference was withdrawn) that Zimmern had waived his right to file such a counter-cross-claim.[15] The Court believes that

---

[14]As already noted, this Opinion addresses only the Motion to Strike, not the Motion to Withdraw Reference. The Court will subsequently issue a report and recommendation to the District Court on the Motion to Withdraw Reference, and will recommend that the reference not be withdrawn based upon, among other reasons, Zimmern's waiver of his right to a jury trial. If Zimmern had not waived this right, this Court would recommend that the District Court withdraw the reference.

[15]Certain courts in cases cited in this opinion have discussed the concern raised by non-bankrupt defendants that by choosing not to file a counterclaim in order to preserve their right to a jury trial, the trustee will subsequently contend they are barred from filing their counterclaim.

31

although this concern is not unfounded, courts and litigants have given disproportionate weight to this issue. First, the law is clear that District Courts have substantial discretion to allow parties to amend their pleadings. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) ("The decision to grant or deny a motion to amend pleadings is entrusted to the sound discretion of the district court."). Accordingly, once a non-bankrupt defendant such as Zimmern finds himself in District Court due to the withdrawal of reference, he can always seek leave of that court to file his counter-cross-claim against the trustee, and the odds of obtaining such leave are typically quite high. Second, even if no counter-cross-claim was prosecuted, if Zimmern successfully defends against the Cross-Claim brought by the Trustee, the practical effect of a successful defense would be that the Trustee would not receive title to the Earnest Money – and therefore Zimmern could request the District Court to issue a judgment awarding Zimmern the Earnest Money based upon the language in the prayer paragraph "for such other and further relief as the Court deems just."

## IV. CONCLUSION

The right to a jury trial is a foundational right in this country's history. Striking a party's demand for a jury trial should not be done lightly. In the suit at bar, however, the Court concludes that it should strike Zimmern's demand for a jury trial because: (1) he filed the Counter-Cross-Claim expressly asserting that the Earnest Money is his property, and not the property of Endeavour's estate; (2) the Fifth Circuit's definition of "arguable property" of the estate convinces this Court that the Counter-Cross-Claim asserts a claim against property of Endeavour's estate; (3) Zimmern's assertion of a claim against Endeavour's estate is the equivalent of Zimmern filing a proof of claim in the main case; (4) the Trilogy holding is that filing a proof of claim results in a

32

loss of the right to a jury trial if the trustee objects to the claim or seeks some other affirmative relief relating to the claim; and (5) the Trustee in the dispute at bar does indeed seek affirmative relief relating to Zimmern's claim, namely that the Trustee, not Zimmern, is entitled to the Earnest Money.

For all of these reasons, this Court concludes that it should grant the Motion to Strike. An Order striking Zimmern's jury demand will be entered on the docket simultaneously with the entry on the docket of this Memorandum Opinion.


Signed on this 12th day of March, 2010.

Jeff Bohm
United States Bankruptcy Judge